Jack A. KANZ, Appellant,

v.

Helen A. HOOD, et al., Appellees.

No. 10–98–248–CV.

Court of Appeals of Texas, Waco.

April 12, 2000.

G. Philip Robertson, Robertson & Robertson, Clifton, for appellant.

Gregory B. Johnson, Malone & Johnson, Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

REX D. DAVIS, Chief Justice.

Appellant Jack A. Kanz presents two issues on appeal in which he claims that the trial court erred when it: (1) denied his attorney's fees for his defense of an unsuccessful removal suit against him as independent executor and (2) ordered the district clerk to distribute the estate because it interfered with the independent executor's right to be free of court supervision. *See* TEX. PROB.CODE ANN. §§ 145(h), 149B, 149C(c) (Vernon 1980 & Supp.2000).

We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Andrew Kanz, Jr., died in September of 1988 and appointed his son, Jack Kanz (hereinafter Kanz), independent executor of his estate in his will. In April of 1994, Helen A. Hood, Alma L. Marion, and Joe V. Kanz, (collectively "Hood"), beneficiaries under Andrew Kanz' will, filed a petition against Kanz in his capacity as inde-

pendent executor of their father's estate, in which they complained that Kanz had not made an accounting or any distributions of the estate. In February of 1995, Hood filed a motion to recover the compensation paid to Kanz as independent executor of the estate and to disapprove his final accounting.

In September of 1995, Hood filed a motion to replace Kanz as independent executor of the estate with Joe V. Kanz ("Joe"). In the motion, Hood requested that the trial court declare the position of independent executor vacant and appoint Joe as independent executor. Hood claimed that Kanz' affidavit, filed when Kanz resigned as independent executor in September of 1994, was insufficient to close the estate. Kanz filed a response in which he claimed that the trial court did not have jurisdiction because the estate was closed.

After a bench trial, the trial court held that Kanz executed a false closing affidavit; ordered that Hood recover the attorney's fees paid to Kanz; and appointed a receiver to sell the remainder of the estate's assets. Kanz appealed to this court and we affirmed the trial court's judgment, as modified by our opinion. *See Kanz v. Hood*, No. 10–96–152–CV, (Waco October 15, 1997, no pet.) (not designated for publication).

In December of 1997, both Hood and Kanz filed applications for reimbursement of their attorneys' fees and costs. The trial court granted Hood's application for reimbursement, denied Kanz' application, and ordered the district clerk to immediately distribute the funds held in the registry of the court.[1] Pursuant to Kanz' request, the trial court issued its findings of

fact and conclusions of law. Kanz subsequently perfected his current appeal.

### ATTORNEY'S FEES

■ Kanz' first issue on appeal claims that the trial court's findings of fact, in which the trial court denied his request for attorney's fees for his defense of a removal action instituted against him, were against the great weight and preponderance of the evidence.

■ A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards used to review jury verdicts for factual sufficiency determinations. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 911–12 (Tex.App.—Austin 1998, pet. denied). We must weigh all the evidence in the record and overturn the trial court's findings of fact only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772; *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied).

The trial court may award an independent executor his attorney's fees used for his defense of a removal action, whether the removal action is successful or not, if the independent executor's defense is in good faith. Tex. Prob.Code Ann. § 149C(c) (Vernon 1980).[2] Kanz argues that the trial court's findings of fact, in which it held that his "attempting to defend his own gross misconduct and gross mismanagement [was] not an action taken in good faith," conflicts with the clear language of section 149C(c).[3] Kanz contends that the

---

1. The trial court ordered a receiver to sell the family farm, the sole remaining asset of the estate. After the receiver sold the property, he placed the funds from the sale in the registry of the court.

2. Section 149C(c) of the Texas Probate Code states: "An independent executor who defends an action for his removal in good faith, whether successful or not, shall be allowed

out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings."

3. The trial court's findings of fact, relating to Kanz' actions as independent executor, were as follows:

\* \* \*

6. Defendant Jack Kanz was guilty of either gross misconduct or gross mismanage-

trial court did not remove him as independent executor and did not make an explicit finding of fact that his defense of the removal suit was in bad faith. Therefore, the trial court was required to award him attorney's fees under section 149C(c) because as a matter of law, his effective defense must have been in good faith. Kanz further claims that other courts have held, either directly or indirectly, that reimbursement of an independent executor's attorney's fees are mandatory under section 149C(c).[4]

An independent executor does not need to be successful in his defense of a removal action in order to be awarded attorney's fees under the Probate Code. *See* TEX. PROB.CODE ANN. § 149C(c) (Vernon 1980). Rather, the trial court's award of attorney's fees hinges entirely upon its determination of whether the independent executor's defense was in good faith. *Id.*

> ment of his duties as independent executor in failing to wind up the matters of the estate and in trying to wrongfully close the estate.
>
> 7. Defendant Jack Kanz failed to properly wind up the affairs of the estate and clear up title to the real estate.
>
> 8. Defendant Jack Kanz wrongfully attempted to close the estate and distribute real estate to the legatees that he knew the estate did not own. In doing so, Defendant willfully failed to perform a legal duty, and intentionally committed a wrongful act, thereby breaching his fiduciary duty to the legatees and causing actual harm to the legatees, as evidenced by the considerable delay and expense required for the settling of the estate.
>
> 9. Defendant Jack Kanz' attempting to defend his own gross misconduct and gross mismanagement is not an action taken in good faith.
>
> 10. Defendant Jack Kanz [sic] failure to clear up the title issues and properly wind up the affairs of the estate necessitated the filing of Plaintiff's action to exchange the real property to clear up the title and for the Court to appoint a receiver and order a sale and distribution.
>
> * * *

4. Kanz argues that in *Garcia*, the trial court held that reimbursement of expenses was

After a bench trial, the trial court found that Kanz did not correct several curable title defects to the family farm before he attempted to distribute the farm to the beneficiaries. The trial court also determined that Kanz filed a false closing affidavit and did not properly close the estate. Although the trial court did not remove Kanz from his post as independent executor, it expressly held that he did not defend the removal action in good faith.[5] Section 149C(c) does not require the trial court to award attorney's fees if it fails to remove the independent executor. *See id.* After reviewing the record, we hold that the trial court's determination was not against the great weight and preponderance of the evidence.

We overrule Kanz' first issue.

## INTERFERENCE WITH DUTIES OF INDEPENDENT EXECUTOR

In his second issue, Kanz contends that the trial court violated section 149B(b)

> mandatory under section 149C(c). *Garcia v. Garcia*, 878 S.W.2d 678, 680 (Tex.App.—Corpus Christi 1994, no writ). We disagree.
>
> *Garcia* is distinguishable from our present case because the appellant in *Garcia* appealed the trial court's failure to charge the appellee personally for the attorney's fees she expended in her removal suit against him, while Kanz appealed the trial court's finding of fact regarding his good faith defense. *Id.* Because the appellant in *Garcia* failed to challenge the trial court's finding that the appellee did not defend the removal action in good faith, the court determined that under section 149C(c), the estate was required to pay the appellee's attorney's fees. *Id.* We do not view *Garcia* as authority that section 149C(c) requires the mandatory reimbursement of attorney's fees for the defense of a removal suit.

5. In their brief, the appellees posit an explanation for the trial court's failure to remove Kanz as independent executor. They state that the trial court had appointed a receiver to sell the last remaining asset of the estate and that the proceeds from that sale were distributed to the beneficiaries. They suggest that because there were no remaining assets in the estate and essentially nothing left for an executor to do, that it would be a waste of judicial resources for the trial court to remove Kanz and appoint a new executor.

of the Texas Probate Code when it interfered with his duties as independent executor by ordering the district clerk to distribute the proceeds of the estate. *See* TEX. PROB.CODE ANN. § 149B(b) (Vernon 1980). Section 149B(b) of the Texas Probate Code states, "unless the court finds a continued necessity for administration of the estate, the court shall order its distribution by the independent executor to the persons entitled to the property." *Id.* § 149B(b) (Vernon Supp.2000).

▬ As we held in the first appeal, the petition for accounting and distribution was properly filed in the district court, as was the action to remove Kanz as independent executor. *Kanz v. Hood,* No. 10–96–152–CV, (Waco October 15, 1997, no pet.) (not designated for publication); *see* TEX. PROB.CODE ANN. § 149C(a); *Eppenauer v. Eppenauer,* 831 S.W.2d 30, 34 (Tex.App.—El Paso 1992, no writ). A district court's authority to order accounting, distribution, and removal includes the power to appoint a receiver to assume management and control of estates in the process of independent administration. *See Stanley v. Henderson,* 139 Tex. 160, 162 S.W.2d 95, 97–98 (1942); *Griggs v. Brewster,* 122 Tex. 588, 62 S.W.2d 980, 984 (1933); *Oldham v. Keaton,* 597 S.W.2d 938, 942 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); *Metting v. Metting,* 431 S.W.2d 906, 908 (Tex.Civ.App.—San Antonio 1968, no writ); *O'Connor v. O'Connor,* 320 S.W.2d 384, 390 (Tex.Civ.App.—Dallas 1959, writ dism'd); *see also* 17 M.K. WOODWARD & ERNEST E. SMITH, III, TEXAS PRACTICE: PROBATE & DECEDENT'S ESTATES § 508 (1971 & Supp.1999). Furthermore, removal of the independent executor is not a necessary prerequisite to the appointment of a receiver to take control of the administration:

> [D]iscussion of whether appointment of a receiver is tantamount to removal of the executor would serve no useful purpose. It is well settled that a district court has power to appoint a receiver of an estate which is in the process of independent administration. In most cases, no practical consequences would result from a recital that the independent executor is removed. As said in *O'Connor v. O'Connor,* supra, the appointment of a receiver gives full relief, so language of removal would be "duplicative and unnecessary."

*Metting v. Metting,* 431 S.W.2d at 908 (quoting *O'Connor v. O'Connor,* 320 S.W.2d at 391).

Kanz argues that, although the trial court had statutory authority to order the executor to distribute the estate, the court lacked the authority to order the district clerk to do the same after the funds from the sale of the property were deposited into the registry of the court. Kanz does not complain, however, that the beneficiaries did not get their share of the estate; that the receiver sold the property for too low a sum; or that the beneficiaries incurred lengthy delays in receiving their share of the estate from the district clerk. Rather, Kanz complains that the trial court's order interfered with his duties as an independent executor. Even assuming that the trial court did violate section 149B(b) of the Texas Probate Code, we hold it was harmless. *See* TEX.R.APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment . . ."). This being a one asset liquidation and distribution, a substitute independent executor would not have improved the beneficiaries' recovery.

We overrule Kanz' second issue.

The judgment of the trial court is affirmed.

GRAY, J., dissents.

TOM GRAY, Justice, dissenting.

The trial court had no jurisdiction to take any of the actions complained of on appeal. Because the majority affirms the

actions of the trial court, I respectfully dissent.

We should not be distracted by the apparent simplicity of the result reached by the trial court. The trial court has control over the estate assets only because the funds are on deposit with the district clerk. The trial court has ordered certain fees and expenses paid, others not paid and the remaining proceeds disbursed equally to the nine brothers and sisters, all equal distributees under the decedents will.

At first blush it may appear to be an acceptable result because of the questionable activities of the independent executor in the past. It is not. First, we must remember that in the earlier suit to remove Kanz as independent executor the trial court heard all the evidence and did not remove him. Second, and much more serious, is that the majority opinion allows a trial court to assume control over an independent administration contrary to the Probate Code, established case precedent and the express appointment made by the deceased, Kanz's father.

## INDEPENDENT ADMINISTRATION IN TEXAS

Independent administrations are provided for by section 145(b) of the Probate Code, which provides:

> Any person capable of making a will may provide in his will that *no other action shall be had in the county court in relation to the settlement of his estate* than the probating and recording of his will, and the return of an inventory, appraisement, and list of claims of his estate.

TEX. PROB.CODE ANN. § 145(b) (Vernon 1980) (emphasis added). The purpose of this restraint upon the county court is to free the independent executor from judicial supervision and to effect the distribution of an estate with a minimum of cost and delay. *Burke v. Satterfield,* 525 S.W.2d 950, 955 (Tex.1975). As long as the estate is represented by an independent executor, further action of any nature

should not be had in the court except where the Probate Code specifically and explicitly so provides. *D'Unger v. De Pena,* 931 S.W.2d 533 (Tex.1996); *Bunting v. Pearson,* 430 S.W.2d 470 (Tex.1968); *see also* TEX. PROB.CODE ANN. § 145(h) (Vernon 1980).

The trial court did not remove Kanz as independent executor in the earlier suit. The heirs that sought his removal had ample opportunity to appeal that determination at the same time that the executor was appealing the appointment of a receiver. They did not. As such Kanz remains vested with all the authority and power of his office. As an independent executor, he can do anything without court approval that a dependent executor can do with court approval. This has been the law applicable to independent executors since at least 1887. In *Dwyer v. Kaltayer,* the Texas Supreme Court in holding that an independent executor could operate a mercantile business stated the rule as follows:

> But, according to our construction, the executor had the power of administering the estate free from the control of the county court, without other enlargement or any limitation of his powers, except such as were thrown around him by the statute. It cannot be doubted that such an executor, called in our state, for the sake of convenience, *an independent executor, has the power to do without the order of the county court every act which an executor administering an estate under the control of the court can do with such order.* In other words, when not restrained by the will itself he can certainly exercise all the powers given by statute to any other executor or administrator.

*Dwyer v. Kaltayer,* 68 Tex. 554, 563, 5 S.W. 75, 79 (1887) (emphasis added).

Various courts have used strong language to describe the nature of the powers of the independent executor. In the words of the Texas Supreme Court, "An independent executor is just that—independent,

independent of court supervision." *D'Unger v. De Pena*, 931 S.W.2d 533, 535 (Tex. 1996).

In one of the most often cited cases on the issue the Texas Supreme Court expressed the independent executor's authority as follows:

> With reference to such matters the executor can do whatever the court could authorize to be done, if the estate was under its entire control. *McDonough v. Cross*, 40 Tex. [251], 280 [ (1874) ]. The limitation placed upon the powers of the court operates to confer authority upon the executor to do without action of the court those things which it is prohibited to order. This is the measure of the independent power conferred by law upon the executor, and the extent to which the prohibition upon the court goes. The prohibition upon the power of the court arises out of the existence of a trustee to whom the testator has chosen to confide those powers, ...

*Roy v. Whitaker*, 92 Tex. 346, 355–356, 48 S.W. 892, 897 (1898).

The Dallas Court of Appeals described the nature of the independent executor as follows: "His 'independence' consists largely in his right in the administration of such estate to do without an order of the county court every act which he could do with such an order, were he acting under the control of such court." *Etter v. Tuck*, 91 S.W.2d 875, 877 (Tex.Civ.App.—Dallas 1936, writ dism'd), *and temporary injunction dismissed*, 101 S.W.2d 843 (Tex.Civ. App.—Dallas 1937, no writ). Probably the strongest language regarding the power of an independent executor was expressed by the Galveston Court of Appeals. It stated:

> [W]here the language of a will appointing an independent executor is clear and unambiguous, he becomes a creature of the will and not of the probate court. He is by the terms of the will vested with *unbridled authority* over the estate and is authorized to do any act respecting it which the court could authorize to be done if the entire estate were under

its control, or whatever testator himself could have done in his lifetime, except as restrained by the terms of the will itself.

*Hutcherson v. Hutcherson*, 135 S.W.2d 757, 758 (Tex.Civ.App.—Galveston 1939, writ ref'd) (emphasis added).

## TRIAL COURT'S DENIAL OF CLAIM

Once qualified as independent executor and until removed, the independent executor is the only individual vested with the authority and the power to determine if a payment of an expense from estate funds or a distribution from the estate which has been entrusted to the executor's care is appropriate. This has been the rule since at least 1877 when the Texas Supreme Court held that the allowance of claims against an estate subject to independent administration need not be approved by the county court. *McLane v. Belvin*, 47 Tex. 493, 501 (1877); *see also Roy v. Whitaker*, 92 Tex. 346, 355, 48 S.W. 892, 895 (1898). The Commission of Appeals determined that not only could the independent executor pay the debts of the estate being administered, the independent executor could also sell estate assets, without judicial intervention, to pay the debts. The Commission explained its holding as follows:

> Although the various decisions cited involve an administration of the deceased husband's estate under the direction of the probate court, they are equally decisive of the scope of exclusive jurisdiction of the independent executor of the deceased husband's will, so far as the payment of the community debts is concerned; for it is well settled that, *as regards the sale of property belonging to the estate of the testator, for the purpose of paying the testator's debts, his duly authorized independent executor has all the authority which could be conferred on the administrator of the estate by the probate court if the estate were being administered there.*

*Lovejoy v. Cockrell*, 63 S.W.2d 1009, 1010 (Tex.Comm'n.App.1933, judgm't aff'd).

Thus, unlike a dependent executor or administrator, where an application for approval to pay an expense must be filed and court approval must be obtained, no judicial approval is required for an independent executor to act. This also applies to a payment that the independent executor is making to himself. As the Houston Court of Appeals has explained:

> He is entitled to pay claims against the estate out of funds of the estate without court authorization in all situations where an ordinary executor could pay them after securing a court order. The independent executor has the same responsibilities and duties with reference to the estate as does the executor under the direction of the probate court. [citing *Roy v. Whitaker*]. He is entitled to pay claims against the estate out of funds of the estate without court authorization in all situations where an ordinary executor could pay them after securing a court order. *Lang v. Shell Petroleum Corporation*, 138 Tex. 399, 159 S.W.2d 478 [1942]. *We see no reason to except from this rule claims against the estate owned by the executor, whether incurred before or after the death of the testator.*
>
> * * *
>
> We think it does not follow that the executor must sue himself in District Court to establish his personal claim against the estate. He may allow his own claim in the exercise of the discretion confided in him by the testator. If a subsequent action for accounting is brought against him by those entitled to the estate, he must justify his action in allowing himself compensation for carrying on a business, and the reasonableness of the amount allowed, just as he must justify any other item which he might claim as an expense of administration.

*Walling v. Hubbard*, 389 S.W.2d 581, 590 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e. and writ dism'd w.o.j.) (emphasis added).

Parties cannot confer jurisdiction on a court by agreement or failure to object to actions taken in the absence of jurisdiction. *Russ Berrie and Co., Inc. v. Gantt*, 998 S.W.2d 713, 715 (Tex.App.—El Paso 1999, no pet.). Thus, even if the court is asked to approve and does approve a particular payment, it does so without jurisdiction.

When the parties applied to the district court for payment of their attorney fees and costs incurred in the suit to remove Kanz as executor, they were both asking the court to do something over which it has no jurisdiction. By approving one application and rejecting the other, the court has performed the task that the decreased entrusted to his son, and the court is now acting in place of the independent executor. This is exactly what the legislature and the deceased prohibited by the authorization for and creation of an independent administration of his estate.

The only activities that a court can involve itself in once an independent administration has been created, are those which the Probate Code "specifically and explicitly provides for some action in the county court." TEX. PROB.CODE § 145(h); *see also D'Unger v. De Pena*, 931 S.W.2d 533, 534 (Tex.1996); *Bunting v. Pearson*, 430 S.W.2d 470, 473 (Tex.1968). Texas Probate Code § 149C (a) and (b) provide the trial court with a specific procedure to remove an independent executor. TEX. PROB.CODE § 149C (a), (b) (Vernon 1980 & Supp.2000). That attempt has already been made by the devisees and failed.

Probate Code § 149C (c) and (d) are not such specific and explicit provisions. TEX. PROB.CODE § 149(c), (d) (Vernon 1980 & Supp.2000). Rather, these provisions are written broadly so that any one of three individuals, depending on the situation, could make the decision as to whether cost and expenses will be paid out of the estate funds. These three individuals are:

1. Independent Executor—if not removed;

2. The trial court—as part of the order of removal;[1] or

3. A successor personal representative of the estate.

Because Kanz is still the executor, he is the only one empowered to make the determination. Of course the executor's actions are subject to the constraints of the probate code including a suit in connection with a final accounting to challenge the executor's payment or denial of specific expenses, but that is not the form of the action before us. *See Walling v. Hubbard,* 389 S.W.2d 581, 590 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e. and writ dism'd w.o.j.).

The matter should have been remanded by the district court to the county court immediately upon the resolution of the prior dispute. TEX. PROB.CODE ANN. § 5 (Vernon 1980 & Supp.2000). If this had been done in a timely fashion, there would have been no pending district court suit in which to file these applications for payment of expenses. Additionally, once filed, the district court should have refused to act upon the request because it lacked jurisdiction to do so.

For the foregoing reasons, and on the strength of the statutes and cases cited, I would hold that the trial court was without authority to grant or deny Kanz an award of fees and cost incurred in defending the suit for his removal as executor.

## DISTRICT CLERK'S DISTRIBUTION OF THE ESTATE

The independent executor also complains that the trial court has no jurisdiction to order the district clerk to make any disposition of the estate's funds other than to pay them over to him as independent executor. He is absolutely correct. The Texas Supreme Court has held that a probate court has no authority to maintain control over estate funds if there was a duly qualified independent executor. In the words of the Court:

Nothing in the Probate Code specifically and explicitly provides for the probate court to withhold the funds in its registry from the independent executor under the circumstances in this case. The probate court abused its discretion because it had no statutory authority to maintain control over the estate funds in its registry and to refuse to release the estate funds to the independent executor.

TEX. PROB.CODE § 145(h); *see D'Unger v. De Pena,* 931 S.W.2d 533, 534–535 (Tex. 1996).

On a case with remarkably similar facts, the money was in the registry of the court and the court ordered certain payments to be made from the funds on deposit and the remainder paid to the distributees, the Houston [14th] Court of Appeals held that the trial court's actions were void and an abuse of discretion. As the Court explained:

We find no provision in the Probate Code authorizing the orders entered by respondent on July 10, 1991 and January 24, 1992. These orders wrongfully permitted the court to assume control, management and settlement of the estate, which is clearly against the intent of the decedent. In fact, by requiring the note payments to be paid into the registry of the court, respondent has in effect converted decedent's estate from an independent administration into a dependent administration. Respondent's orders prevented the independent executrix from exercising her statutory authority to manage and settle the estate independently of the court. The trial judge clearly abused her discretion.

---

1. Because the parties are seeking judicial approval of attorneys fees and cost, there is some question as to whether the request should have been part of the earlier suit between these parties like any other proceeding in which attorney fees or cost are sought. Resolution of this issue is not relevant to this dissenting opinion and accordingly will not be discussed further.

While it appears that this estate should be closed, and that may have been the motivation for respondent's actions, such orders are not statutorily authorized. We find that respondent's July 10, 1991 and January 24, 1992 orders are void . . .

*Collins v. Baker*, 825 S.W.2d 555, 556–557 (Tex.App.—Houston [14th] 1992, original proceeding).

The majority holds that if the trial court did not have the authority to order the clerk to make the distribution pursuant to § 149B (b), that the error is harmless because there was nothing further for the executor to do. If the trial court had no jurisdiction to act, we cannot apply the harmless error rule to his actions. Jurisdiction cannot be waived and is not subject to a harmless error analysis.

Additionally, without control over the disbursement of funds the independent executor cannot fulfill the duties of his office necessary to close the estate. Nor, if the executor so desires, can he bring and pay for the suit, now specifically authorized by Probate Code § 149E, to obtain a judicial declaration closing the estate and discharging the executor's individual liability relating to the past administration of the estate. An independent executor is specifically authorized to retain a "reasonable reserve" of assets for this purpose. TEX. PROB.CODE § 149E (Vernon 1980 & Supp. 2000). Because the independent executor is deprived of the funds necessary to preform his duties, the trial court's actions cannot be harmless.

### CONCLUSION

I would hold that the trial court lacked jurisdiction to grant or deny the applications for payment of attorneys fees and cost and that the trial court lacked jurisdiction to order the clerk to make a distribution of estate assets. Accordingly, I would reverse the judgment of the trial court, remand this cause with instructions for the trial court to vacate his void orders and to dismiss the applications and motion for lack of jurisdiction, and to further order the cause remanded to the county court for further proceedings of the estate, if any.